761 So.2d 900 (2000)
Jimmy Lee AVERA, Appellant.
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01662-COA.
Court of Appeals of Mississippi.
March 21, 2000.
Rehearing Denied June 6, 2000.
*901 James L. Davis, III, Gulfport, Attorney for Appellant.
Office of the Attorney General by Dewitt T. Allred, III, Attorneys for Appellee.
BEFORE McMILLIN, C.J., BRIDGES, AND THOMAS, JJ.
BRIDGES, J., for the Court:
¶ 1. Jimmy Lee Avera was convicted of murder by a jury in the First Judicial District of Harrison County Circuit Court. Avera was sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction, Avera appeals to this Court raising the following six issues which he contends require his conviction to be reversed
I. THE COURT ERRED IN NOT GRANTING A LESSER INCLUDED MAN-SLAUGHTER INSTRUCTION AS REQUESTED BY THE DEFENDANT AT THE TRIAL (SEE JURY INSTRUCTIONS D-2 THROUGH D-6). THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE GRANTING OF A MANSLAUGHTER INSTRUCTION.
II. THE COURT ERRED IN GIVING S-2, THE STATE'S INSTRUCTION ON THE INSANITY DEFENSE. THE INSTRUCTION WAS CONFUSING TO THE JURY AND IMPROPERLY SHIFTED THE BURDEN OF PROOF AS IT EXISTED AT THE TIME THE CASE WENT TO THE JURY.
III. THE COURT ERRED IN GRANTING STATE'S INSTRUCTION S-4 ON "DELIBERATE DESIGN". THE INSTRUCTION IS AN INCORRECT STATEMENT OF THE LAW.
IV. THE COURT ERRED IN NOT ALLOWING ADDITIONAL PEREMPTORY CHALLENGES, AND/OR NOT ALLOWING THE DEFENDANT'S STRIKE FOR CAUSE OF JURORS ALEXANDER AND GOODWIN.
V. THE VERDICT IS CONTRARY TO THE LAW AND EVIDENCE.
VI. THE ERRORS COMMITTED AT TRIAL, IF NOT INDIVIDUALLY, CUMULATIVELY REQUIRE REVERSAL.
¶ 2. After reviewing the record, we conclude that the issues raised by Avera are without merit. Accordingly, the judgment of the circuit court is affirmed.

FACTS
¶ 3. In 1991, Jimmy Lee Avera met Tabitha Sparks. The couple immediately fell in love and became engaged to be married. Several months later, the couple moved into a house that belonged to Avera's parents. Shortly thereafter, the relationship began to deteriorate, and Sparks moved out of the house that she was sharing with Avera. Avera testified that because of these events, he became severely depressed and stopped participating in all the daily activities that he once enjoyed.
¶ 4. On April 28, 1992, Sparks was working at the Majik Market, and Avera stopped by to talk with her. Sparks told *902 him to leave and said that they would talk later. Avera left and drove around in his Camaro, and around 11:30 P.M., he stopped at Sparks's trailer to finish their conversation. The conversation turned into an argument, and Avera testified that he went to his car and got a gun so that he could scare Sparks. The couple began to argue again this time waking Sparks's son. Avera testified that he asked to hold the boy who had been like a son to him, and he laid down the gun in order to hold the child. When Avera laid down the gun, Sparks picked it up. Avera then began to wrestle her for the gun finally taking it from her. Sparks ran out the door, and Avera started chasing her.
¶ 5. Avera testified that at this point all he remembers is that he wanted to catch Sparks and that he was angry and furious at the situation. Avera's testimony stated that he heard a ringing sound then blanked out, and when things cleared up, he saw Sparks lying on the ground. Various neighbors from the trailer park testified that they heard a commotion and saw Avera repeatedly firing at Sparks. The neighbors testified that Sparks was running away from Avera screaming for help and asking to be let in a trailer when Avera began shooting at her. After the shooting, Avera left in his Camaro, had a flat tire, abandoned the car, and then hitchhiked to Baton Rouge, Louisiana. When he arrived in Baton Rouge, Avera called his sister and then the police, and he told the police that he had shot his girlfriend in Gulfport the night before. Avera did not deny firing the fatal shot; rather, his defense was that he was temporarily insane when he shot Sparks.

PROCEEDINGS BELOW
¶ 6. In August 1992, Avera was indicted in the Circuit Court of the First Judicial District of Harrison County for the murder of Sparks. In January 1994, he was found guilty of murder by a jury and was sentenced to life imprisonment. Avera appealed, and this Court found that the jury was not properly instructed as to how to resolve the insanity defense issue. Accordingly, we reversed and remanded the cause for a new trial. In August 1998, the case was tried before another jury. Avera was again found guilty of murder and sentenced to life imprisonment. Aggrieved with the circuit court proceedings, Avera has now perfected this appeal.

ARGUMENT AND DISCUSSION OF LAW

I. THE COURT ERRED IN NOT GRANTING A LESSER INCLUDED MANSLAUGHTER INSTRUCTION AS REQUESTED BY THE DEFENDANT AT THE TRIAL (SEE JURY INSTRUCTIONS D-2 THROUGH D-6). THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE GRANTING OF A MANSLAUGHTER INSTRUCTION.
¶ 7. Avera argues on appeal that he presented evidence that he had no deliberate design to affect the death of Sparks. Avera alleges that he was severely depressed, and when he and Sparks argued, he became furious which made him unable to know what he was doing at the time of the shooting. According to Avera, that was sufficient evidence for the trial court to grant a lesser-included-offense instruction on manslaughter. We find this argument to be totally lacking in merit.
¶ 8. Manslaughter is defined as "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense." Miss.Code Ann. § 97-3-35 (Rev.1994). This Mississippi Supreme Court has defined heat of passion as:
[A] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by *903 some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
Tait v. State, 669 So.2d 85, 89 (Miss.1996) (quoting Buchanan v. State, 567 So.2d 194, 197 (Miss. 1990)).
¶ 9. The Mississippi Supreme Court has also held that "[a] lesser-included-offense instruction is proper only if the record supports finding an evidentiary basis for the instruction." Ormond v. State, 599 So.2d 951, 960 (Miss.1992) (citing Mease v. State, 539 So.2d 1324, 1330 (Miss.1989)) (other citations omitted). The standard used to determine whether a lesser-included-offense instruction should be granted is as follows:
[A] lesser included offense instruction should be granted unless the trial judge-and ultimately this Court-can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).
Greenwood v. State, 747 So.2d 273 (¶ 12) (Miss.Ct.App.1999) (quoting Harper v. State, 478 So.2d 1017, 1021 (Miss.1985)).
¶ 10. In the case sub judice, there is no evidence that Avera acted in the heat of passion. Although the record does contain evidence indicating that Avera and Sparks were having problems in their relationship, there is nothing in the record that suggests that Sparks provoked Avera in the moments preceding her death. In fact, the record shows that Sparks was shot in her back running away from Avera and screaming for help. Further, the record established that Avera took a gun into Sparks's trailer at which point the couple began to argue. When Avera put the gun down and Sparks picked the gun up, Avera wrestled the gun away from her and then began chasing her through the trailer park. The record shows no indication of any type of provocation by Sparks. The mere fact that Avera and Sparks were arguing before the shooting is insufficient to reduce the crime to manslaughter. Johnson v. State, 416 So.2d 383, 388 (Miss. 1982). There was no evidence presented during the course of the trial that would entitle Avera to a lesser-included-offense instruction. Accordingly, we find this issue to be without merit.

II. THE COURT ERRED IN GIVING S-2, THE STATE'S INSTRUCTION ON THE INSANITY DEFENSE. THE INSTRUCTION WAS CONFUSING TO THE JURY AND IMPROPERLY SHIFTED THE BURDEN OF PROOF AS IT EXISTED AT THE TIME THE CASE WENT TO THE JURY.
¶ 11. Avera argues on appeal that the first paragraph of the State's instruction S-2 is an incorrect statement of law. The first paragraph of S-2 reads as follows:
The Court instructs the Jury that there is a presumption that an accused is sane and, therefore, the burden is initially on the accused to introduce evidence which creates a reasonable doubt as to his sanity at the time of the act. However, once the Defendant has created a reasonable doubt as to the Defendant's sanity, it is the burden of the State to present sufficient evidence to prove the Defendant's sanity beyond a reasonable doubt.
Avera contends that this instruction inappropriately shifts the burden to the defendant by instructing the jury in the first sentence that the defendant has the burden of proving beyond a reasonable doubt that he is not sane. He maintains that this burden shifting instruction is confusing to the jury. The State argues that this instruction is a correct statement of law and *904 when read as a whole adequately instructs the jury.
¶ 12. In Mississippi, courts apply the M'Naughton test in determining sanity. Russell v. State, 729 So.2d 781, 784 (Miss.1997) (citations omitted). "[T]he test for insanity is whether the defendant was unable to distinguish between right from wrong at the time the act was committed.... The determination as to a defendant's sanity is within the province of the jury which may accept or reject expert and lay testimony." Id. Avera concedes that the second through fourth paragraphs of S-2 correctly state the M'Naughton test and law in Mississippi. He takes issue with the first paragraph, however, because it instructs that initially the accused has the burden to introduce evidence which creates a reasonable doubt as to his sanity at the time of the act. Avera contends that this is an incorrect statement of law; however, we disagree.
¶ 13. The State quotes Edwards v. State, which states the following,
the burden is initially on the defendant to introduce evidence creating a reasonable doubt of his sanity ... However, once the defendant has overcome this initial burden, it is the burden of the state to present sufficient evidence to prove the defendant's sanity beyond a reasonable doubt.
Edwards v. State, 441 So.2d 84, 86 (Miss. 1983) (citations omitted). Although Edwards was a plurality vote, the Mississippi Supreme Court again held in White that,
[t]here is a presumption that an accused is sane and, therefore, the burden is initially on the accused to introduce evidence creating a reasonable doubt as to his sanity at the time of the act. However, once the accused has overcome this initial burden, it is the burden of the State to present sufficient evidence to prove the accused's sanity beyond a reasonable doubt.
White v. State, 542 So.2d 250, 252 (Miss. 1989) (citations omitted). The language of S-2 mirrors the language found in Edwards and White and is a correct statement of the law. Further, an entire reading of the instruction shows unequivocally that the State bears the burden to prove sanity beyond a reasonable doubt. Based on the applicable law, jury instruction S-2 correctly stated the law surrounding an insanity defense. Accordingly, this issue is without merit.

III. THE COURT ERRED IN GRANTING STATE'S INSTRUCTION S-4 ON "DELIBERATE DESIGN". THE INSTRUCTION IS AN INCORRECT STATEMENT OF THE LAW.
¶ 14. Avera maintains that the State's instruction S-4 on "deliberate design" misstated the law. Instruction S-4 reads as follows:
The Court instructs the jury that design to kill is all that is required by Mississippi law to make a homicide a murder. Deliberate design means intent to kill, without authority of law and not being legally justifiable, legally excusable or under circumstances that would reduce the act to a lesser crime.
Avera argues that this instruction is not a correct statement of the law because of the omission of the word "deliberate" in the first sentence. He further maintains that this is an abstract instruction and this omission cannot be considered harmless error that can be cured by other instructions. The State argues that this issue is procedurally barred. The State maintains that although Avera objected to S-4 at trial, he is arguing grounds on appeal that he did not present to the trial court.
¶ 15. During the trial, Avera's counsel did object to Jury Instruction S-4 on the following grounds:
(1) the instruction tried to lessen the State's burden of proof, (2) the instruction highlights one particular element, and (3) the instruction is inappropriate. The Mississippi Supreme Court has consistently held that: *905 no assignment of error based on the giving of an instruction to the jury will be considered on appeal unless specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection.... a party may not argue that an instruction was erroneous for a reason other than the reason assigned on objection to the instruction at trial.
Walker v. State, 740 So.2d 873 (¶ 56) (Miss. 1999) (citations omitted). When a party objects to a particular jury instruction, he should "state a contemporaneous objection in specific terms so that the trial court has an opportunity to correct any mistake." Young v. Robinson, 538 So.2d 781, 783 (Miss.1989) (citations omitted).
¶ 16. In the case sub judice, Avera did not bring to the trial judge's attention that the first sentence omitted the word "deliberate," nor does he argue that the instruction is abstract. Avera's grounds for objection to Instruction S-4 at trial are different from that now presented to this Court, and therefore, review of any error is thus waived. Alternatively, the second sentence of Instruction S-4 correctly defines "deliberate design." It is apparent from this sentence that the jury was being instructed on "deliberate design." Instruction S-4 read as a whole is a correct statement of law; therefore, not only is this issue procedurally waived, it is substantively lacking in merit.

IV. THE COURT ERRED IN NOT ALLOWING ADDITIONAL PEREMPTORY CHALLENGES, AND/OR NOT ALLOWING THE DEFENDANT'S STRIKE FOR CAUSE OF JURORS ALEXANDER AND GOODWIN.
¶ 17. Avera argues on appeal that the lower court erred by not allowing additional peremptory challenges. Avera's brief states that the defense challenged juror Alexander for cause because of her indications that she would "weigh towards the victim." It is apparent from the record that this information was discussed in a bench conference that was not reported. This Court can only assume that Avera is asserting that Alexander would be favorable toward the victim. The challenge for cause was denied, and Avera was forced to use his final peremptory strike to prevent Alexander from becoming a member of the jury. Goodwin came to the panel immediately after Alexander, and the defense requested an additional peremptory strike, or in the alternative, that Goodwin be struck for cause. The trial court denied both requests. Avera maintains on appeal that both Alexander and Goodwin should have been removed for cause or the defense should have been given an additional peremptory strike. Avera contends that the trial court's failure to grant the challenge for cause and its refusal to allow an additional peremptory strike amounts to error that requires reversal of his conviction.

A. Did the trial court err by not allowing Avera's strike for cause of Juror Alexander?
¶ 18. The Mississippi Supreme Court has consistently held that "when a trial court fails to sustain a challenge for cause by the defense, it must be shown that the defense had exhausted all of his peremptory challenges before the trial court's refusal to allow the challenge for cause." Evans v. State, 725 So.2d 613, 651 (¶ 129) (Miss.1997) (citations omitted). The rationale behind this rule is found in Hansen v. State, 592 So.2d 114, 129-30 (Miss.1991):
[T]he appellant has the power to cure substantially any error so long as he has remaining unused peremptory challenges. We would put the integrity of the trial process at risk were we to allow a litigant to refrain from using his peremptory challenges and, suffering an adverse verdict at trial, secure reversal on appeal on grounds that the Circuit Court did not do what appellant wholly had the power to do.
*906 (citations omitted). At the time Avera challenged Alexander for cause, he had one remaining peremptory challenge. Since Avera had not exhausted his peremptory challenges, this assignment of error against Alexander was not properly preserved and is procedurally barred from consideration on appeal. Evans at 651. However, we will address the merits of this issue.
¶ 19. "A trial court has wide discretion in determining whether to excuse prospective jurors, including those challenged for cause." Poe v. State, 739 So.2d 405 (¶ 14) (Miss.1999) (citations omitted). "[B]ecause the trial judge hears and sees the individual jurors, he is in the better position to evaluate their responses and determine whether or not they should be excluded for cause." Williamson v. State, 512 So.2d 868, 881 (Miss.1987). "[T]he determination of whether a juror is fair and impartial is a judicial question, and will not be set aside unless such determination is clearly wrong." Taylor v. State, 672 So.2d 1246, 1264 (Miss.1996). The record reflects that Alexander knew two assistant district attorneys, and she also knew the defense counsel's wife. However, Alexander stated that she could be fair and impartial to both sides. The circuit court judge also stated that he did not hear enough in Alexander's statements to rise to the level of excusing her for cause. The record indicates that Alexander made it clear that she could be fair to both sides. The record does not show an abuse of discretion by the circuit court judge. As such, we find this issue to be not only procedurally barred but also lacking merit.

B. Did the trial court err by not allowing Avera's strike for cause of Juror Goodwin?
¶ 20. Avera also argues that Goodwin should have been struck for cause since he had used all of his peremptory challenges, or in the alternative, he should have been allowed an additional peremptory challenge. Since Avera had exhausted all peremptory challenges at the time Goodwin was challenged for cause, this assignment of error has been properly preserved for consideration on appeal. Evans, 725 So.2d at 651. However, after thoroughly examining the record, we cannot find that the circuit court judge abused his discretion by refusing to excuse Goodwin for cause nor for refusing to allow an additional peremptory challenge.
¶ 21. Goodwin is a dispatcher with the Gulfport police department. Avera maintains that Goodwin's experiences and connections with the Gulfport police department were sufficient reasons to challenge his ability to be fair and impartial. This Court has found that persons involved in law enforcement are not per se excluded from jury service. Porter v. State, 749 So.2d 250 (¶ 19) (Miss.Ct.App.1999) (citing Walker v. State, 671 So.2d 581, 624 (Miss. 1995)). In the case sub judice, the record shows that Goodwin had no knowledge of the facts of this case. Further, he stated that his ties with the Gulfport Police Department would not keep him from being fair and impartial to both sides. The question of whether a juror is fair or impartial is within the discretion of the trial judge. Taylor, 672 So.2d at 1264. After reviewing the record, we cannot find that the circuit judge abused his discretion. Accordingly, this issue is without merit.

V. THE VERDICT IS CONTRARY TO THE LAW AND EVIDENCE.
¶ 22. Avera argues on appeal that there is insufficient evidence to meet the State's burden of malice or deliberate design to commit murder. The State maintains that the evidence of murder was legally sufficient. Our scope of review on appeal of a challenge to the sufficiency of the evidence is very limited. This standard has been stated many times and need not be restated here. McClain v. State, 625 So.2d 774, 778 (Miss.1993); Nicolaou v. State, 612 So.2d 1080, 1083 (Miss.1992); McFee v. State, 511 So.2d 130, 133-34 (Miss.1987); Wetz v. State, 503 So.2d 803, 812 (Miss.1987). After reviewing the record, *907 we find that there is sufficient evidence to support the jury's verdict.
¶ 23. The evidence presented at trial established that Avera and Sparks were arguing. Avera retrieved a gun from his car and shot Sparks in the back twice. When Sparks was shot, she was running from Avera attempting to enter a neighboring trailer. The record did not show that Sparks provoked Avera in any way. Avera then left the trailer park and hitchhiked to Louisiana. The record in this case clearly contains sufficient evidence to support the jury's verdict. Accordingly, this issue is without merit.

VI. THE ERRORS COMMITTED AT TRIAL, IF NOT INDIVIDUALLY, CUMULATIVELY REQUIRE REVERSAL.
¶ 24. Avera maintains that the errors committed by the trial court individually require reversal of Avera's conviction. Avera also cites Jenkins v. State and asserts that even if the errors standing alone do not require reversal, when considered cumulatively the errors do require reversal. Jenkins v. State, 607 So.2d 1171, 1183 (Miss.1992). However, in Jenkins, the court found an abundance of prosecutorial misconduct that did not occur in this trial. Jenkins, 607 So.2d at 1184. The State contends where there is not reversible error in part, there is no reversible error in the whole. Wilburn v. State, 608 So.2d 702, 705 (Miss.1992). We agree. Having examined each of the alleged errors and having found them not to be of merit, we affirm.
¶ 25. THE JUDGMENT OF THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT WITH THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., IRVING, LEE, MOORE, AND THOMAS, JJ., CONCUR. PAYNE, J., NOT PARTICIPATING.