# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 9, 2011

Lyle W. Cayce
Clerk

No. 09-30543

WARREN SCOTT, III,

Petitioner-Appellant

v.

CORNEL H. HUBERT,

Respondent-Appellee

Appeal from the United States District Court
for the Middle District of Louisiana

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges
PATRICK E. HIGGINBOTHAM, Circuit Judge:

Petitioner Warren Scott III, a prisoner in the custody of the state of Louisiana, appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. His § 2254 petition raised three claims, one of which is not at issue on this appeal. In the two that are, Scott seeks to challenge an aggravated-burglary conviction on the ground that his guilty plea thereto was not knowing and voluntary and a sexual-battery conviction on the ground of ineffective assistance of counsel. The district court determined that the former challenge was barred by limitations and that the latter challenge was procedurally defaulted. We conclude that both of these determinations were erroneous and reverse the judgment of the district court in part.

No. 09-30543

I.

A.

Scott was convicted of one count of aggravated burglary by virtue of a guilty plea he entered in January 2003 (on the same day, he also pled guilty to two counts of unauthorized entry of an inhabited dwelling, but those convictions are not at issue on this appeal[1]). The state district court sentenced him to twenty years in prison. Because the federal district court dismissed Scott's challenge to his aggravated-burglary conviction on limitations grounds, we present the relevant facts and procedural history on a time line:

- <u>February 23, 2004</u>: The Louisiana First Circuit Court of Appeal affirms Scott's conviction but vacates his sentence and remands for resentencing. Scott does not seek any further direct review. The resentencing takes place several weeks later; the trial court again sentences Scott to a twenty-year term of imprisonment.

- <u>March 24, 2004</u>: The time in which Scott could have sought direct review of the appellate court's February 23 decision expires.[2] Accordingly, the February 23 judgment becomes final for AEDPA purposes.[3]

---

[1] The district court correctly determined that Scott's challenges to his unauthorized-entry convictions were barred by limitations, and we declined Scott's request for a certificate of appealability on this issue.

[2] *See* LA. SUP. CT. R. X, § (5)(a) ("An application seeking to review a judgment of the court of appeal . . . after an appeal to that court . . . shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal . . . .").

[3] The district court erroneously concluded that the judgment became final for AEDPA purposes on March 8, 2004, because that is when it became final under Louisiana law. *See Scott v. Hubert*, No. 3:08-cv-0011-FJP-SCR, 2009 WL 5851072, at *3 n.7 (M.D. La. June 4, 2009) (unpublished) (citing LA. CODE CRIM. PROC. art. 922(B)). However, "when interpreting the statutory language of 28 U.S.C. § 2244(d)(1)(A), we are not bound by the state law's definition of finality." *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003). Under § 2244(d)(1)(A), a judgment of conviction becomes final upon the expiration of the time for seeking direct review in the state court. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir. 2006) ("[A] conviction becomes final at the conclusion of direct review or when the time for such

No. 09-30543

- <u>May 6, 2005</u>: The state appellate court affirms Scott's new sentence. Scott does not seek any further direct review.

- <u>May 9, 2005</u>: Scott files a state habeas application in Louisiana state court, triggering AEDPA's tolling provision.[4] The trial court and the intermediate court of appeals both deny relief.

- <u>June 6, 2005</u>: The time in which Scott could have sought direct review of the appellate court's May 6 decision expires, and that decision becomes final for AEDPA purposes.

- <u>February 2, 2007</u>: The Louisiana Supreme Court denies Scott's petition for review. Accordingly, the period during which AEDPA's limitations period is tolled ends on this date.[5]

- <u>December 31, 2007</u>: Scott files his federal habeas petition.

For purposes of calculating the limitations period under AEDPA, then, nearly two years elapsed between the First Circuit's February 2004 judgment's becoming final and Scott filing his federal habeas petition. However, less than eleven months elapsed between the date on which that court's May 2005

---

review has expired, as specified by AEDPA, regardless of when state law says finality occurs."). Normally that time expires ninety days after the state court of last resort enters its judgment. *Roberts*, 319 F.3d at 694. But when the defendant concludes his state-court direct-appeal before it reaches the state court of last resort, "the conviction becomes final when the time for seeking further direct review in the state court expires." *Id.* This federal rule holds steady even where state law provides that finality occurs on a different date. *Compare* LA. CODE CRIM. PROC. art. 922(B) (providing that the court of appeal's judgment becomes final under Louisiana law fourteen days after the rendition of judgment in all cases in which an application for a writ of review is not filed with the Louisiana Supreme Court), *and supra* note 2 and accompanying text, *with Roberts*, 319 F.3d at 693 n.15 (noting that the judgment of an intermediate court of appeals is not final under Texas law until the mandate has issued), *and id.* at 694–95 (rejecting the argument that the mandate-issuance date should determine finality under AEDPA).

[4] AEDPA's one-year limitations period is tolled during the pendency of a state habeas application. 28 U.S.C. § 2244(d)(2).

[5] *See Lawrence v. Florida*, 549 U.S. 327, 331–36 (2007) (holding that AEDPA's one-year limitations period is not tolled during the pendency of a petition for certiorari to the United States Supreme Court that seeks review of a state court's denial of post-conviction relief).

3

judgment became final and the date on which Scott filed his federal habeas petition.

The district court determined that under Louisiana law, Scott's aggravated-burglary conviction became final when the February 2004 judgment became final. Accordingly, it dismissed Scott's challenge to that conviction as barred by AEDPA's statute of limitations.

B.

A Louisiana jury convicted Scott of one count of sexual battery. The trial court sentenced him to nine years of imprisonment, and the court of appeals affirmed his conviction and sentence on direct appeal. In May 2005 Scott timely filed an application for post-conviction relief in Louisiana district court. Scott's *pro se* state habeas application raised challenges to the sexual-battery conviction as well as to the aggravated-burglary and unauthorized-entry convictions discussed above. His challenge to his sexual-battery conviction was clumsily worded and minimally developed.[6] Liberally construed, Scott's state habeas application alleged that his attorney provided constitutionally ineffective assistance of counsel by failing to raise a *Batson* challenge during jury selection.[7]

The state district court referred Scott's application to a commissioner. In July 2005 the commissioner recommended that Scott's application be denied in its entirety. As to Scott's challenge to his sexual-battery conviction, the commissioner concluded that Scott had provided nothing more than general statements and conclusory allegations and thus had failed to specify with the required particularity any factual basis for relief. In September 2005, the state

---

[6] The entirety of Scott's challenge was as follows: "On February 12, 2003, my rights to a jury trial of my peers was violated. And I was wrongfully convicted due to same prior ineffective assistance of counsel Sherman Ruth that was ill prepared for my jury trial and inexperienced. And due to an all white jury selection."

[7] *See generally Batson v. Kentucky*, 476 U.S. 79 (1986) (prohibiting prosecutors from peremptorily challenging venire members based on their race).

district court adopted the commissioner's report and recommendation and dismissed all of Scott's claims. Several weeks later Scott filed a motion asking the district court to furnish him with a copy of the voir-dire transcript. Scott's motion averred that he was indigent, that he could not afford to pay for the transcripts himself, and that he had a right to access and use the transcripts in support of his claim for post-conviction relief. The district court denied the motion.

Scott filed a petition for supervisory writs with the Louisiana First Circuit Court of Appeal. In December 2005 that court affirmed the district court's dismissal of Scott's challenges to his aggravated-burglary and unauthorized-entry convictions. However, as to Scott's challenge to his sexual-battery conviction, the court of appeal ordered the district court to furnish Scott with a copy of the voir-dire transcript. The court also authorized Scott to file a second petition for review of the denial of his jury-composition claim using the material in the transcript. In June 2006, after receiving the voir-dire transcript, Scott once again sought review in the First Circuit Court of Appeal.

With the voir-dire transcript in hand, Scott was able to present factually detailed and legally specific arguments in support of his claim that his lawyers rendered constitutionally ineffective assistance of counsel by failing to object to the racial makeup of the jury. Factually, Scott attached the voir-dire transcript to his petition for review, and the transcript confirms that all six members of the jury that convicted Scott were white.[8] Scott's petition identified by name all of the black venire members who were excluded from his jury, suggested that the black venire members were subjected to more vigorous and aggressive

---

[8] The parties interviewed twenty-seven venire members during voir dire. Eight of the twenty-seven were excused for cause. Of the nineteen remaining venire members, four were black and fifteen were white. All six jurors, as well as the lone alternate juror, were white. The prosecution used its peremptory challenges to exclude 100 percent (four of four) of the eligible black prospective jurors, compared with 13.3 percent (two of fifteen) of the eligible white prospective jurors.

questioning than the white venire members, and highlighted a specific juror whose exclusion he argued could only be explained by racial animus. Legally, Scott argued that the seating of an all-white jury deprived him of both his right to a fair and impartial trial and his right to effective assistance of counsel. He cited numerous relevant legal authorities, including *Batson v. Kentucky*,[9] *Strickland v. Washington*,[10] and the *Miller-El* cases.[11] He contended that his lawyer's failure to object to the racial makeup of the jury was not part of a sound trial strategy and that he was entitled to a new trial unless the prosecution could affirmatively produce a clear and reasonably specific explanation of its legitimate reasons for exercising its peremptory challenges.

Ultimately, however, Scott failed to persuade the Louisiana courts that he was entitled to post-conviction relief. The First Circuit Court of Appeal denied Scott's petition for supervisory writs in September 2006. Scott filed a petition for review with the Louisiana Supreme Court in October 2006 in which he advanced substantially the same arguments he had pressed at the court of appeals. The Louisiana Supreme Court denied review in February 2007. Scott timely filed a federal habeas petition in which he once again alleged that his sexual-battery conviction was tainted by his lawyers' failure to raise a *Batson* challenge.

The district court's review of this claim was hamstrung by an incomplete record. Specifically, the state-court record that the district court relied on included neither Scott's June 2006 filing with the First Circuit Court of Appeal nor his October 2006 filing with the Louisiana Supreme Court. The record

---

[9] *See supra* note 7.

[10] 466 U.S. 668 (1984) (laying out the two-pronged cause-and-prejudice standard used to assess claims of ineffective assistance of counsel).

[11] *See Miller-El v. Dretke*, 545 U.S. 231 (2005) (granting habeas relief on a *Batson* challenge); *Miller-El v. Cockrell*, 537 U.S. 322 (2003) (granting a certificate of appealablility on same).

before the district court thus appeared to indicate that Scott's presentation of this claim to the Louisiana courts consisted entirely of the single-sentence assertion contained in his initial state habeas application.[12]  Not surprisingly, then, the district court determined that Scott had failed to properly exhaust this claim and dismissed it as procedurally defaulted.

## II.

## A.

We review de novo the district court's determination that Scott's petition is barred by AEDPA's statute of limitations.[13]  AEDPA imposes a one-year limitations period that runs from the latest of four dates: here, the relevant date is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[14]

The timeliness of Scott's federal habeas petition turns on when his state-court judgment of conviction became final for AEDPA purposes.  If Scott's judgment of conviction became final on March 24, 2004 (the date on which time expired for Scott to seek state-court direct review of the court of appeal's decision affirming his conviction but vacating his sentence), his federal habeas petition is barred by limitations.  More than a year elapsed between that date and the date on which he filed his state habeas application, and nearly eleven more months elapsed between the conclusion of his state post-conviction proceeding and the filing of his federal habeas petition.  However, if Scott's state-court judgment of conviction became final on June 6, 2005 (the date on which time expired for Scott to seek state-court direct review of the court of appeal's decision

---

[12] *See supra* note 6.

[13] *See, e.g.*, *Mathis v. Thaler*, 616 F.3d 461, 473 (5th Cir. 2010), *cert. filed*, No. 10-855 (Dec. 23, 2010).

[14] 28 U.S.C. § 2244(d)(1)(A).

affirming his new sentence), then his federal petition was filed comfortably within AEDPA's one-year limitations period.

We conclude that Scott's judgment of conviction became final for AEDPA purposes on June 6, 2005.   The district court reached the contrary conclusion—that Scott's conviction became final in March 2004—based on its reading of Louisiana law.[15]  But state law has no bearing on the finality inquiry under AEDPA.[16]  The question of when a conviction becomes final for federal habeas purposes is purely a question of federal law.[17]  And the Supreme Court held in *Burton v. Stewart* that under federal law, "[f]inal judgment in a criminal case means sentence.  The sentence is the judgment."[18]  As a consequence, AEDPA's one-year limitations period does not being to run on a petitioner "until both his conviction *and* sentence" have become final.[19]

The State argues that *Burton* does not control here because Scott's habeas petition challenges only his conviction, not his new sentence.  The State posits that Scott's conviction became final once it was affirmed on direct appeal, irrespective of the status of his sentence.  In effect, the State suggests, two separate judgments were created in this case, a "conviction judgment" and a "sentencing judgment," and Scott was required to immediately file a § 2254 petition challenging the former even though he had not yet concluded his direct appeal from the latter.

---

[15] *See Scott*, 2009 WL 5851072, at *3 n.6 (citing *State v. Lewis*, 350 So. 2d 1197 (La. 1977)).

[16] *Causey*, 450 F.3d at 606 ("'AEDPA, not state law, determines when a judgment is final for federal habeas purposes.'" (quoting *Foreman v. Dretke*, 383 F.3d 336, 339 (5th Cir. 2004))); *Roberts*, 319 F.3d at 694 ("We find no reason to look to state law to determine when a state conviction becomes final for the purposes of § 2244(d)(1)(A).").

[17] *Butler v. Cain*, 533 F.3d 314, 318 n.1 (5th Cir. 2008).

[18] *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (per curiam) (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)).

[19] *Id.* at 156–57.

This argument founders on the shoals of *Burton*, where the Supreme Court held that the district court lacked jurisdiction over a habeas petition filed by a petitioner who had pursued exactly the course the State advocates.[20]  There, the state court upheld the petitioner's conviction on direct review but vacated his sentence and remanded for resentencing.[21]  Following resentencing, the petitioner took another direct appeal, challenging only his sentence.  While his appeal from the resentencing was still pending, he filed a federal habeas petition challenging only his conviction.  The petition was denied on the merits.[22]  After his state-court sentencing appeal was final, the petitioner filed another federal habeas petition challenging only his sentence.[23]  The Supreme Court dismissed Burton's second petition because it was "second or successive" within the meaning of 28 U.S.C. § 2244(b)(1) and had been filed without prior authorization from the court of appeals.[24]  In doing so, it sharply criticized the logic that underwrites Louisiana's current position:

> This reasoning . . . would allow prisoners to file separate habeas petitions in the not uncommon situation where a conviction is upheld but a sentence is reversed. Such a result would be inconsistent with both the exhaustion requirement, with its purpose of reducing piecemeal litigation, and AEDPA, with its goal of streamlining federal habeas proceedings . . . .[25]

---

[20] *See Tharpe v. Thaler*, 628 F.3d 719, 724 (5th Cir. 2010). ("The *Burton* Court was asked specifically whether a habeas claim that challenges a *conviction* and another habeas claim that challenges a *sentence* involve two different 'judgments' for AEDPA purposes. The Court answered 'no.'").

[21] There were actually multiple appeals and resentencings in *Burton*, *see* 549 U.S. at 149–51, but that fact does not alter the analysis here.

[22] *Id.* at 151.

[23] *Id.* at 152.

[24] *Id.* at 153.

[25] *Id.* at 154 (internal citations and quotation marks omitted).

*Burton* establishes that AEDPA's limitations period does "not begin until both [the] conviction *and* sentence" have become final.[26] This Court has already clarified that this rule applies even to cases (such as this one) in which the petitioner challenges only his conviction and not his sentence. In *United States v. Messervey*, a federal prisoner took an appeal from his mail-fraud and money-laundering convictions.[27] On direct appeal, we affirmed his convictions but vacated his sentence and remanded for resentencing. The prisoner filed a § 2255 petition challenging his convictions—not his new sentence—within one year after his resentencing, but more than one year after his convictions were affirmed.[28] We held that the petition was timely:

> In light of *Burton*, we hold that in cases in which a defendant's conviction is affirmed on appeal but the case is remanded for resentencing, the defendant's conviction becomes final for limitations purposes under the AEDPA when [] both the conviction and sentence become final by the conclusion of direct review or the expiration of time for seeking such review.[29]

*Messervey* is an unpublished decision, so it does not bind us. But it does persuade us.[30] Its reasoning is perfectly consonant with the Supreme Court's

---

[26] *Id.* at 156 (internal quotation marks omitted).

[27] 269 F. App'x 379, 380 (5th Cir. 2008) (per curiam) (unpublished).

[28] *Id.*

[29] *Id.* at 381.

[30] *See generally United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008) ("We have observed that there is no indication Congress intended federal and state prisoners to be treated differently in habeas proceedings and that 'final' in § 2255 has the same meaning as 'final' used for the analogous limitation period in 28 U.S.C. § 2254 proceedings." (citing *Reyes-Requena v. United States*, 243 F.3d 893, 898 (5th Cir. 2001))).

decision in *Burton*, and the Tenth[31] and Eleventh[32] Circuits have hewn to the same course.

Therefore, we hold that when a state prisoner's conviction is affirmed on direct appeal but the sentence is vacated and the case is remanded for resentencing, the judgment of conviction does not become final within the meaning of 28 U.S.C. § 2244(d)(1)(A) until both the conviction and the sentence have become final by the conclusion of direct review or the expiration of the time for seeking such review.[33] As the *Burton* Court recognized, allowing a conviction to ripen into a final judgment before the sentence attached to that conviction became final would mean that a petitioner whose conviction was affirmed but whose sentence was vacated might have to file two separate habeas petitions to avoid dismissal on limitations grounds. This cannot be the law because the second of those petitions would be presumptively subject to dismissal.[34] AEDPA is not a Hobson's choice. A petitioner who wishes to challenge his conviction is not required to do so immediately and forfeit his right to later challenge his sentence. Nor must a petitioner who wishes to preserve his ability to challenge his sentence forfeit his right to challenge his conviction. AEDPA allows a state

---

[31] *United States. v. Carbajal-Moreno*, 332 F. App'x 472, 474–75 (10th Cir. 2009) (unpublished) (applying this rule in a § 2255 proceeding). *Cf. Reber v. Steele*, 570 F.3d 1206, 1209 (10th Cir. 2009) (dismissing for want of jurisdiction a § 2254 petition filed by a prisoner who had been convicted but not yet sentenced at the time he filed his petition on the ground that his state-court judgment was not yet final).

[32] *Ferreira v. Sec'y, Dept. of Corrections*, 494 F.3d 1286, 1288 & 1293 (11th Cir. 2007) (applying the rule of *Burton* to a § 2254 petitioner whose federal habeas petition "includ[ed] claims concerning only his original conviction and not his subsequent resentencing").

[33] The State contends this reading of *Burton* cannot be reconciled with our prior decision in *Caldwell v. Dretke*, 429 F.3d 521 (5th Cir. 2005). We have previously considered and rejected this argument. *See Tharpe*, 628 F.3d at 724–25 (concluding that the rule announced in *Caldwell*—that a Texas deferred-adjudication order is a "judgment" within th meaning of § 2244(d)(1)(A)—is inapplicable in the situation described in *Burton* and that the two decisions are "wholly reconcilable").

[34] *See* 28 U.S.C. § 2244(b).

prisoner to wait until both his conviction and his sentence have become final before filing a petition under § 2254.

In this case, Scott's sentence did not become final until June 6, 2005, when the time expired for him to seek additional direct review of his sentence in state court. He had already filed his state habeas application by that date, and it remained pending until February 2, 2007. Because Scott filed his § 2254 petition less than eleven months later, on December 31, 2007, his petition was timely filed. Therefore, the district court erred in dismissing Scott's challenge to his aggravated-burglary conviction as barred by limitations.

B.

AEDPA requires a prisoner in state custody to exhaust his state-court remedies before seeking habeas relief from a federal court.[35] A prisoner in state custody exhausts his state-court remedies by fairly presenting the substance of his constitutional claim to a state high court.[36] The exhaustion requirement has both a legal component and a factual component.[37] The legal component requires a petitioner to present his claims to the state court within a "federal constitutional framework."[38] That is to say, the claim must either be framed "'in terms so particular as to call to mind a specific right protected by the Constitution[,] or allege[] a pattern of facts that is well within the mainstream of constitutional litigation.'"[39] The factual component dictates that a petitioner must have presented the state court with material evidentiary support for his

---

[35] 28 U.S.C. § 2254(b)(1)(A).

[36] *E.g.*, *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

[37] *See id.* ("The exhaustion requirement is not satisfied if the prisoner presents new legal theories *or* factual claims in his federal habeas petition." (emphasis added)).

[38] *Yohey v. Collins*, 985 F.2d 222, 226 (5th Cir. 1993).

[39] *Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir. 2005) (per curiam) (quoting *Baldwin v. Reese*, 541 U.S. 27 (2004)) (internal quotation marks omitted).

constitutional claim.[40] "[A]lthough a habeas petitioner will be allowed to present bits of evidence to a federal court that were not presented to the state court, evidence that places the claims in a significantly different legal posture must first be presented to the state courts."[41]   Whether a § 2254 petitioner has exhausted his state remedies is a question of law that is reviewed de novo.[42]

In this case, Scott has plainly satisfied AEDPA's exhaustion requirement. As explained above, in the petitions for review he filed with the First Circuit Court of Appeal in June 2006 and the Louisiana Supreme Court in October 2006, Scott fully developed his legal claim of ineffective assistance of counsel based on his attorneys' failure to raise a *Batson* challenge and offered material evidentiary support for it in the form of the voir-dire transcript.[43]   The district court reached a contrary conclusion because the record before it did not contain these filings.   With the benefit of a complete and accurate record, we are confident that the able magistrate judge would have arrived at the same conclusion that we reach today.

## III.

Scott's judgment of conviction in his aggravated-burglary case did not become final for AEDPA purposes until both his conviction and his sentence became final.   Because he filed his federal habeas petition less than one year after the state court entered judgment affirming his sentence, his federal habeas petition is not barred by limitations.   And because Scott presented the Louisiana

---

[40] See *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003) ("We have consistently held that a 'petitioner fails to exhaust state remedies when he presents *material* additional evidentiary support to the federal court that was not presented to the state court.'" (quoting *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996))).

[41] *Id.* at 387 (citation and internal quotation marks omitted).

[42] *E.g., id.* at 386.

[43] *See supra* Section I(B).

No. 09-30543

courts with the legal theory and the evidentiary materials based on which he wishes to challenge his sexual-battery conviction, he properly exhausted that challenge. Accordingly, the portions of the district court's judgment dismissing those challenges are reversed, and this action is remanded to the district court for further proceedings.